**FILED**

APR 15 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

O 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District **Northern District of California** | Docket or Case No.: 5:18-CR-00613-LHK BLF |
|---|---|---|

Name (under which you were convicted):
**DONACIANO ANTONIO RENTERIA**

| Place of Confinement: **F.C.I. HERLONG, HERLONG, CALIFORNIA** | Prisoner No.: **25357-111** |
|---|---|

| UNITED STATES OF AMERICA | Movant (include name under which convicted) |
|---|---|
| V. **DONACIANO ANTONIO RENTERIA** | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
   **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
   **SAN JOSE DIVISION**

   (b) Criminal docket or case number (if you know): **CR-18-00613**

2. (a) Date of the judgment of conviction (if you know): **05/13/2021**

   (b) Date of sentencing: **05/12/2021**

3. Length of sentence: **58 MONTHS CONCURRENTLY TO 58 MONTHS**

4. Nature of crime (all counts):
   **18 U.S.C. §922(G)(1) - FELON IN POSSESSION OF A FIREARM AND AMMUNITION**
   **21 U.S.C. §841(a)(1) & (b)(1)(C) - POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA**

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐   (2) Guilty ☒   (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?
   **\*\*\*BOTH: 18 U.S.C. §922(G)(1) & 21 U.S.C. §841(A)(1) & (B)(1)(C)**

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☐   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☒

Page 2 of 13

AO 243 (Rev. 09/17)

    (4)   Nature of the proceeding: _____

    (5)   Grounds raised:

          **\*\*\*DOES NOT APPLY\*\*\***

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐    No ☒

    (7)   Result: _____

    (8)   Date of result (if you know): _____

  (b)  If you filed any second motion, petition, or application, give the same information:

    (1)   Name of court: _____

    (2)   Docket of case number (if you know): _____

    (3)   Date of filing (if you know): _____

    (4)   Nature of the proceeding: _____

    (5)   Grounds raised:

          **\*\*\*DOES NOT APPLY\*\*\***

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐    No ☒

    (7)   Result: _____

    (8)   Date of result (if you know): _____

  (c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)   First petition:    Yes ☐    No ☒

    (2)   Second petition:    Yes ☐    No ☒

  (d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

1.           <u>GROUND ONE - INEFFECTIVE COUNSEL -</u>
2.           <u>FAILURE TO ARGUE FOR TIME CREDITS</u>

3.        According to the boiler plate §2255 forms that is required by
4.   this court as a part of the initial filing for a habeas writ, it
5.   states on page 5, paragraph 12(a)- Supporting facts-, "Do not argue
6.   or cite law. Just state the specific facts that support your claim."
7.        Here, the petitioner will do just that, however, the petitioner
8.   also knows that the government, when it replies, will use case law
9.   to support thier reasoning as to why this §2255 should not be granted
10.  Because of this inherent flaw in this filing system, petitioner asks
11.  this court to grant leave for a sur-reply from the petitioner to
12.  any rebuttal the government makes before ruling on the merits of
13.  this petition.
14.       Under U.S. Sentencing Guidelines §5G1.3(b), there is ambiguity
15.  in that it affords the court with 'broad discretion' and latitude
16.  in considering factors that could, should and need to be applied
17.  during sentencing, and the petitioner here asserts that his counsel,
18.  Mr. Lyons, assured him that the amount of time that he spent in
19.  pre-release or bond, would be a positive contributing factor. In
20.  short, Mr. Renteria was told by his legal representative that the
21.  amount of time spent released on bond could and would be applied
22.  towards any sentence imposed by this court.  The petitioner asserts
23.  that he was hoodwinked by the paid counsel, and was further left
24.  in a state of questioning during his sentencing when this factor
25.  was not even discussed.
26.       The petitioner was told by counsel that time spent out of jail
27.  during pre-trial release, was like, "money in the bank." Counsel
28.  assured his client that he would receive at minimum, partial credit

                          page 5(a)

1.  for the time he spent out released on "good behavior", but when it

2.  came time for sentencing, this §5G1.3(c) factor was not even raised.

3.       A contract is a contract, whether it be verbal or written, and

4.  an agreement, even a loose one, is of even more importance when that

5.  'loose agreement' is made with a supposed officer of the court.

6.  Here the petitioner believed that it was in his best interest to

7.  remain out of custody for as long as possible becasue the time that

8.  was being spent constructively out of prison would be a considering

9.  factor for less time in prison.  It appears that this factor was

10. never even a marginal piece of any calculus, and because it was this

11. petitioners genuine belief that he would gain a time credit consideration

12. for the months spent released, he now asks this court to remand sentencing

14. in part, to address this overlooked issue. This was a failure on

15. the part of defense counsel, and is an early example of ineffective

16. counsel.

17. ///

18. ///

19. ///

20. ///

21. ///

22. ///

23. ///

24. ///

25. ///

26. ///

27. ///

28. ///

AO 243 (Rev. 09/17)

(4)   Did you appeal from the denial of your motion, petition, or application?

　　Yes ☐　　No ☒

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

　　Yes ☐　　No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

`Raising the issues with this §2255 Motion will have the same effect`

GROUND TWO:   `INEFFECTIVE COUNSEL - FAILURE TO CITE US. V. REHAIF,`

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

`*** SEE ATTACHED PAGES CONTAINING GROUNDS AND FACTS ***`
`***                                              ***`

(b)  Direct Appeal of Ground Two:

(1)   If you appealed from the judgment of conviction, did you raise this issue?

　　Yes ☐　　No ☒

1.            <u>GROUND TWO – INEFFECTIVE COUNSEL –</u>
                <u>FAILURE TO CITE U.S. V. REHAIF</u>
2.

3.        Petitioner was enticed to plea guilty to a violation of

4.    18 U.S.C. §§922(g)(1), and in the course of that sentencing, the

5.    time from indictment, 12/20/2018 through sentencing, 5/12/2021, this

6.    petitioner was never told about the magnitude of <u>U.S. v. Rehaif.</u>

7.        In order for a person to be convicted of a 922(g)(1), that

8.    person must possess the weapon "knowingly" that he can't possess

9.    said firearm.  In other words, the person must be aware that he

10.   is a prohibited person, and the government has an equal obligation

11.   and responsibility to prove that the person knew that they were

12.   knowledgable that they were in fact breaking a federal law.  The

13.   nexus of responsibilty to prove that the offender was "knowledgable"

14.   lies solely on the governemnts shoulders, and here the government

15.   fails to prove just that.

16.       Mr. Renteria was charged with 18 U.S.C. §§922(g)(1) and 21 U.S.C.

17.   §§841(a)(1) on December 20, 2018.  On August 8, 2019, the government

18.   superseded the Petitioner with a "superseding indictment" [Doc. 9]

19.   for no reason other than to change the language because the

20.   government knew that their language in the original indictment was

21.   faulty, and that the charges wouldn't pass the smell test, that

22.   being new rulings coming down from the United States Supreme Court

23.   that dealt with <u>Rehaif</u> issues.

24.       Petitioner asserts that a 'superseding indictment' should at

25.   minimus contain new charges, additional charges, or a reduction of

26.   charges, but here, the government didn't change any of the actual

27.   charges, they remained, so the question is then, why do a super-

28.   seding indictment on a person when nothing in the charging

1.  of the original crime changed? The reason is because the original
2.  verbage in the indictment was flawed, and if the original verbage
3.  in the original indictment was flawed, then the indictment was
4.  flawed.  If the indictment was flawed, then that portion of the charge
5.  too was flawed, and the petitioner asserts that the crime of 922(g)
6.  should be vacated, and his sentence remanded to the district court
7.  for a closer study.
8.      Here the government did a slick trick by dismissing a charge
9.  because of failing language, recharged the petitioner with the
10. exact same crime (emphasis added) but added crucial words that he
11. "knowingly" possessed a firearm when he "knew" that he couldn't
12. legally; what the government is doing is changing their position
13. what what they beleive his mens rea was at the time of the alleged
14. offense.  The government moved the goal post in the middle of a
15. game, because they knew that they would lose the game lawfully, the
16. way the rules existed on the day the game began.  The government
17. realized that their indictment  was a failure in a post-Rehaif
18. environment, so they purposely changed the language to ensure
19. victory.  It's similar to insider trading.  Petitioner asserts that
20. the government should not have been allowed to do a superseding
21. indictment and use exactly the same crimes, and he further asserts
22. that he should only been charged with the original indictment because
23. when he commited the alleged crime, it was in a pre-Rehaif environment,
24. and it's not his fault that the statutes have been flawed since
25. their inception, and that Rehaif would change the way new 922(g)
26. cases needed to be worded to protect the governments conviction rate.
27. The petitioner was charged in 2018, pre-Rehaif, and after that
28. ruling came from the U.S. Supreme Court, the government scrambled

1.  to make Mr. Renteria's case 'Rehaif' proof, so they craftily

2.  superseded him in late 2019 because they knew that thier original

3.  charging document was faulty.

4.      Rehaif is retroactive for up to one year of the date of its

5.  filing, which this petitioners time frame is in line with. The

6.  main argument the petitioner here is trying to make is that when

7.  the alleged offense occured, the rules were one way, pre-Rehaif,

8.  but mid-stride, after the crime was done and the rules were set

9.  the government set new rules so that way they couldn't possibly

10. lose, and this is contrary to the Rule of Lienity.

11.     The Petitioner is entitled to relief under Rehaif and further

12. under the rule of lienity because the government switched the rules

13. amid litigation solely for the purpose of maximizing punishment.

14. The government knew that this petitioner was entitled to relief

15. because the language in the indictment never stated that he "knew"

16. that he was a prohibited person, nor did it state anything about

17. the governments obligation to prove this knowledge, and becasue it

18. failed to state this in the original indictment, this §2255  demands

19. full jurisprudence.

20.     These  arguments are not suppose to be made by a layperson.

21. This is why the petitioner paid his federal attorney, and because

22. Mr. Lyons never even attempts to get this charge dismissed on

23. similar grounds, the petitioner asserts that his lawyer was totally

24. ineffective, and should have kept these claims alive during sentencing

25. as  legitimate  mitigating factors for a variance or downward

26. departure.  Instead, Mr. Renteria was taken to task not only by

27. the U.S. Government by it's crafty play on superseding indictments

28. where nothing changes, but also by his failed representative, Mr. Lyons.

AO 243 (Rev. 09/17)

GROUND THREE:     INEFFECTIVE ASSISTANCE OF COUNSEL −

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*** SEE ATTACHED PAGES CONTAINING GROUNDS AND FACTS ***
***                                                 ***

(b) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

RAISING THE ISSUE WITH THIS §2255 MOTION WILL HAVE THE SAME EFFECT

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☒

1.          <u>GROUND THREE - INEFFECTIVE COUNSEL -</u>

2.          The petitioner was originally arrested for the instanst offense

3.  by California State Authorities.  The Petitioner bonded out on these

4.  state crimes via electronic monitoring.  This type of electronic

5.  monitoring is tantamount to home confinement, which should and is

6.  nearly always applied as credits towards any sentence imposed.

7.  Here, Renteria spent seven months on ankle braclet monitoring, and

8.  was restricted to travel only from home to work and back.  Petitioner

9.  asserts that he should have been given credits for this time.

10.         My. Lyons, defense counsel, failed to raise this argument, and

11. thereby was yet again, ineffective.  The time that the petitioner

12. spent on this e-monitoring was prior to the federal government

13. picking up the charge from the state, but it was the same crime for

14. which Renteria was originally charged and arrested for.  The statute

15. says that a person can receive credit for any time that is spent in

16. confinement if that time is applied to another sentence, but here,

17. the petitioner spent those seven months in 'home conefinement' but

18. received no credit or benefit for his continued good behavior.

19.         Petitioner argues now that these seven months of "dead" time needs

20. to be re-addressed and adjudicated because he never recieved any time

21. credits for 'home confiement time that he spent prior to the federal

22. indictment, but for the crimes in this instant offense.  Because he

23. didn't receive credit for this restricted time in either the state

24. or the federal jurisdictions, he is asking for this court to remand

25. his sentencing to address this issue that his attorney should have

26. during his faulty representation of this client.

27. ///

28. ///

1.          <u>GROUND FOUR - DUE PROCESS VIOLATION</u>

2.          Petitioner asserts that his Due Process Rights were violated

3.   because: a. he never signed a plea agreement, and therefore was

4.   never made aware of any conditions under which he was no longer

5.   allowed to possess a firearm; b. the Information failed to allege

6.   that Renteria knew he was already a felon in the United States of

7.   America; c. that the sentencing court did not fully advise him of

8.   these impacts during the change of plea hearing and that the government

9.   would have to prove 'beyond a reasonable doubt' that he did already

10.  know that he was a prohibited person; and d. that language barriers

11.  created a perfect storm where Mr. Renteria's primary language is

12.  Spanish and he has limited capacity to understand the complexities

13.  of the English lexicon.

14.          Petitioner here thought he was doing all parties a favor by

15.  saving the government substanial legal resources by pleading guilty

16.  without even signing a plea. He heavily relied on his counsels

17.  legal acumen to guide him through a foreign process, and expected

18.  his paid attorney to represent him to the fullest potential.  Instead,

19.  Renteria got 'shotty' advice, horrible guidance and ineffective service

20.  that led to a lengthy prison term on a conviction that should

21.  have been dismissed from the start.  The Petitioner asserts that he

22.  didn't even comprehend that this his previous crime would prevent

23.  him from any gun ownership, and he also asserts that it should have

24.  been the governemnts obligation to prove that he knew that he was

25.  not allowed to posses any. Going a step further, Renteria isn't

26.  aware of any time when this court told or informed him of thes

27.  impacts or the governemnts heafty challenge to prove mens rea, and

28.  with the reasonable doubt clause, the petitioner asserts that it would

1.  have been impossible to prove this element of the crime required
2.  by U.S. v. Rehaif.
3.      The petitioner doesn't write in english, nor does he read.
4.  How then could it be possible for this person to be expected  to
5.  understand the complexities of U.S. law when these complexities
6.  are not fully understood by judical scholars?  Are there not several
7.  schools of judical thought, all with varying opinions  about how
8.  the laws of the U.S. should be admistered, and are these people not
9.  all Ivy League graduates?  If the nine justices on the United
10. States Supreme Court cant't agree to equal legal theroies, under-
11. standings, rulings, opinions, judgements...etc, then how can this
12. court and government expect a non-english speaking person with an
13. 8th grade education understand the codices of United States Law?
14. It's  a hefty and lofty requirement that has prejudiced this person
15. who now petitions this Court for a remand, evidentiary hearing and
16. resentencing.
17. ///
18. ///
19. ///
20. ///
21. ///
22. ///
23. ///
24. ///
25. ///
26. ///
27. ///
28. ///

1.                    GROUND FIVE - HR 3617
     NEW LAWS PASSED DEALING WITH MARIJUANA CONVICTIONS
2.

3.        As of April 4, 2022, the House of Representatives, in Congress

4.   passed the "Marijauna Opportunity, Reinvestment and Expungement

5.   Act (MORE), House Resolution 3617.  This passage is a seismic shift

6.   as it pertains directly to this petitioner.

7.        "HR 3617 decriminalizes marijauna, expunges the records of

8.   people convicted of federal cannabis offenses, and requires

9.   resentencing in some cases. It provides that any marijauna conviction

10.  will be vacated, and existing sentences modified to eliminate

11.  marijuana amounts from drug calculations."  The information goes on

12.  to say, "thousands of current inmates will be released early."

13.  This passage directly applies to Mr. Renteria.

14.       The bill needs Senate approval, however, this is all but assured

15.  as "a nearly identical version of the MORE Act... passed through

16.  the Senate Judiciary Committee again last September."[1]

17.       A person only has one year to file a § 2255, so the timing of

18.  the filing is crucial, and so this petitioner wants to make the

19.  claim now, and preserve the right to file for a vacated sentence

20.  based on this development.  When this does become law, two things

21.  must happen: 1. a remand is required because the marijuana  conviction

22.  can't remain, and 2. with the removal of the marijuana charge, the

23.  4 point 'enhancement' for carrying the firearm also doesn't exist.

24.  Both of these issues need to be readdressed, and it would be wise

25.  for this court to pre-emptively  remand and vacate this petitioners

26.  sentence to address these subtaintial issues.

27.       As noted in earlier claims, the original indictment for the

28.  18 U.S.C. § 922(g)(1) charge fails to say that the petitioner

1.  "knowingly (knew) he had previously been convicted of a crime

2.  punishable by a term of imprisonment exceeding one year, all in

3.  violation of Title 18, U.S.C., Section 922(g)(1)."  If the government

4.  failed to know this in the first indictment, showing that they too

5.  were not aware of the laws at that moment in time, then how can

6.  they expect a lay-person to know the laws at that moment in time?

7.  It seems that the laws were ambigious at that moment of time, and

8.  as such this petitioner can't be charged with  an "amended complaint"

9.  that does nothing more than change the verbage, to change the rules

10. of the game.

11.

12.             GROUND SIX - SENTENCED USING WRONG  SCORES

13.         Petitioner is in federal custody and is not allowed access to

14. his P.S.R., which is a handicap in itself while trying to file

15. an intelligent motion dealing with issues that are directly related,

16. however, in documents just received by this petitioner he has learned

17. something startling.

18.         On 5/12/21, defense counsel, Mr. Lyons, filed an Amended

19. Sentencing Memorandum, which indicated that this court received

20. a "revised P.S.R." This revision is subtaintially in favor of

21. Mr. Renteria and lowered his scores to, "total offense level of 17

22. and a criminal history category of 4." The revised report went on

23. to make the argument for a downward departure or variance, See

24. Revised PSR at p. 2, para 4.  The report does not indicate if the

25. level 17 should then be varied downward by 3 points for acceptance

26. of responsibility or not, if so, then the sentencing range  should

27. have been 27-33 months or 37-46 assuming that 17 was the correct

28. score.  Here, this petitioner received a 58 month sentence, which

1.  is still outside the guidelines range.

2.      The petitioner understands that the sentencing is 'advisory,'

3.  and that the guidelines are just starting points in a post Booker

4.  environment, however, when a District Court Judge goes outside

5.  that range, a reason must be  mentioned as to why a person was

6.  given a sentence either beloe or above the guidelines.

7.      Here, U.S. Probation is recommending a variance downward, they

8.  also are calculating his scores more lieniently than originally

9.  filed, but it appears that the court disregarded the Revised PSR,

10. stuck with the original filing and sentenced this petitioner according

11. to the first  PSR.  Because this court did not offer explanation

12. into the thinking why it went with a guideline range that was above

13. his actual offense level and criminal history score, and because

14. this court didn't address the U.S. Probations recommendations

15. for a  downward variance, this court must remand and vacate his

16. sentence to address this serious discrepancy.

17. ///

18. ///

19. ///

20. ///

21. ///

22. ///

23. ///

24. ///

25. ------------

26. 1. - from page 9(c) - Article from LISA LEGAL, SEE ATTACHED.

27.

28.

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

     Yes ☐    No ☒

(4)   Did you appeal from the denial of your motion, petition, or application?

     Yes ☐    No ☒

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

     Yes ☐    No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

RAISING THE ISSUES WITH THIS §2255 MOTION WILL HAVE THE SAME EFFECT

_____

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

DOES NOT APPLY ***

_____

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

Remand for resentencing. Time credits for time spent on pre-trial.
The 18 U.S.C. §922(g)(1) conviction vacated and expunged.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on   March 31, 2022
                                                                  (month, date, year)

Executed (signed) on    March 31, 2022_____    (date)

_Donaciano  Antonio  Renteria._
Signature of Movant
 Donaciano  Antonio  Renteria

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

written by:
Justin L. Tripp #40730-086

EXHIBIT "A"

LISA LEGAL ARTICLE ABOUT MORE ACT PASSAGE

TRULINCS  40730086 - TRIPP, JUSTIN LEE - Unit: HER-S-C

---------------------------------------------------------------------------------------

FROM: Legal, Lisa
TO: 40730086
SUBJECT: House Passes Marijuana Decriminalization   LISA Newsletter for April 4, 2022
DATE: 04/03/2022 08:06:17 PM

LISA publishes a free newsletter sent every Monday to inmate subscribers in the Federal system.

Edited by Thomas L. Root, MA, JD

Vol. 8, No. 13
<><>

House Approves Marijuana Reform
Manpower and Corruption Woes Continue to Plague BOP
District Court Punt Blocked by 10th Circuit
Congressional Short Takes


<><>

HOUSE APPROVES MARIJUANA REFORM

The House of Representatives on Friday passed the Marijuana Opportunity, Reinvestment and Expungement (MORE) Act (HR 3617) by a 220-204 margin. The vote fell largely along party lines with only three Republicans supporting the measure and two Democrats opposing it.

HR 3617 decriminalizes marijuana, expunges the records of people convicted of federal cannabis offenses, and requires resentencing in some cases. It provides that any marijuana conviction will be vacated, and existing sentences modified to eliminate marijuana amounts from drug calculations. The only catch is that any sentence including a Guidelines 3B1.1 aggravating role will be ineligible.

The Congressional Budget Office estimates that if the bill becomes law, thousands of current inmates will be released early, reducing time served by current and future inmates by 37,000 person-years.

CBO's analysis accounts for time served by offenders convicted of marijuana-only crimes and time served by people convicted of drug offenses that include pot and other drugs. CBO estimates that the provision would result in net savings of about $800 million over the 2022-2031 period.

Passage of MORE is one of several pieces of legislation that underlines the shift in Congress's attitude  a change that has come about in part because of the way past drug laws have disproportionately hit minority communities. "This Congress represents a sea change," said Rep. Earl Blumenauer (D-Oregon), a co-chair of the Congressional Cannabis Caucus.

The House passed the EQUAL Act last fall by a margin of 361-66. EQUAL eliminates the federal disparity in prison sentences for crack and powder cocaine offenses. A majority of the House GOP overall joined all Democrats in support.

Recently, Sen Richard Burr (North Carolina) became the 10th Senate Republican to back EQUAL, paving the way for likely passage in the upper chamber.

"I think they understand we've got to take a more innovative path. We need to understand addiction. We can't just incarcerate our way out of these problems. And we sure can't continue to turn a blind eye to an egregious injustice, like this crack-powder disparity," said Holly Harris, president of the Justice Action Network.

The lower price of crack cocaine means that it has historically been more easily accessible to people in marginalized lower-income communities, compared to powder cocaine more prevalent in the suburbs.

A nearly identical version of the MORE Act passed in 2020 but stalled in the Senate. It passed through Senate Judiciary Committee again last September. Senate leadership is separately preparing to introduce a legalization bill but has faced sharp criticism for delaying reform. It remains unclear whether MORE will receive a Senate vote.

The White House has not yet issued a statement on whether President Biden supports the legislation. A group of Senate

TRULINCS 40730086 - TRIPP, JUSTIN LEE - Unit: HER-S-C

-------------------------------------------------------------------------------------------

Democrats, including Majority Leader Charles E. Schumer (NY), Sen Cory Booker (NJ) and Sen Ron Wyden (Oregon), is expected to release draft marijuana legislation later this month.

"We've been here before," Nadler said during a press briefing following the vote on Friday. "Unfortunately, the Senate failed to act. Sometimes I think we'd be better off if we didn't have a Senate."

Marijuana Moment, House Approves Federal Marijuana Legalization Bill For Second Time In History (Apr 1)

Congressional Budget Office, Estimated Changes in Direct Spending and Revenues Under H.R. 3617, the MORE Act (Mar 28)

The Hill, House poised to pass bill legalizing marijuana (Mar 28)

HR 3617, MORE Act

Marijuana Moment, Lawmakers And Organizations React To Federal Marijuana Legalization Bill's House Passage (Apr 1)

Washington Post, House passes bill decriminalizing marijuana; Senate fortunes unclear (Apr 1)
<><>

MANPOWER AND CORRUPTION WOES CONTINUE TO PLAGUE BOP

The indictment of a fifth Bureau of Prisons employee in connection with the ongoing sexual abuse scandal at FCI Dublin (California) has caused disheartened outgoing BOP Director Michael Carvajal to remind all 36,000-plus BOP staff "that we ALL have a responsibility to protect staff and inmates by reporting wrongdoing of any kind, especially misconduct, and we must have the courage to do so."

The latest indictment alleges Enrique Chavez, a cook supervisor/foreman at Dublin, engaged in abusive sexual contact with inmates in October 2020. Chavez joins former Warden Ray Garcia, former Chaplain James Highhouse, Safety Administrator John Bellhouse, and recycling technician Ross Klinger as defendants in FCI Dublin sex abuse cases.

Chavez's arrest came only weeks after eight members of Congress demanded an investigation into allegations of abuse and misconduct at the prison.

Writing in Forbes last week, Walter Pavlo said, "The BOP has a substantive history of corruption, staff shortages and, recently, delays in implementation of The First Step Act Tens of thousands of prisoners who believe they have earned credits are awaiting a backlogged BOP to determine when they will be released."

Pavlo wrote, "I spoke with Mary Melek, a case manager at FDC Miami who had 364 prisoners on her caseload until a recent hire cut that in half, still over the recommended 150:1 ratio. Melek expressed her frustration, 'There are 5 augmented openings on a shift, openings where the BOP has planned augmentation, and that has pulled me away from my work'. The augmentation not only applies to case managers, but other workers, including health services." FDC Miami is at 56% of its staffing level, Pavlo said.

Help could be on the way. The recently-passed FY 2022 omnibus spending bill included $7.865 million for the BOP, $200 million more than the BOP requested. According to AFGE National Council President Shane Fausey, the BOP is "expected to hire additional full-time correctional officers in order to reduce the reliance on augmentation and improve staffing beyond mission-critical levels in custodial and all other departments, including medical, counseling, and educational positions.."

President Biden's proposed budget for next year, released last week, asks for even more: $8.18 billion "to ensure the health, safety, and wellbeing of incarcerated individuals and correctional staff; fully implement the First Step Act and ease barriers to successful reentry," according to the DOJ.

The money, of course, does not address the recent spate of corruption. In last week's memo, Carvajal dismissed "the recent media attention regarding misconduct in the BOP as being characterized using phrases such as 'cover-ups,' 'sign of a larger problem' and 'toxic culture of sexual abuse' are not true characterizations of the vast majority of the staff who work in our facilities across the Nation." But Pavlo wrote that "Carvajal could have noted that since his rising to the agency's highest position" a House subcommittee investigation found that BOP "discipline and accountability is not equitably applied ... For high ranking officers, bad behavior is ignored or covered up on a regular basis, and certain officials who should be investigated can avoid discipline."

CERTIFICATE OF SERVICE

I, DONACIANO ANTONIO RENTERIA, attest to that a true and correct copy of: Motion Under 28 U.S.C. § 2255, is served via U.S. mail to:

U.S. Attorney's Office
AUSA Maia T. Perez
150 Almaden Blvd., Suite 900
San Jose, CA 95113

I swear under penalty of perjury that the aforementioned is true and correct, and mailed via U.S. Mail and deposited in the mail box at F.C.I. Herlong, P.O. Box 800, Herlong, CA 96113, and considered filed the day handed to prison authorities.

Dated this 7th Day of April, 2022.

Donaciano A. Renteria

Donaiano A. Renteria

———————————

Donaciano 
Federal Correctional Instituion
F.C.I. HERLONG
P.O. BOX 800
Herlong, CA 96113

\*\*\* LEGAL MAIL \*\*\*

\*\*\* LEGAL MAIL \*\*\*



\*\*\* LEGAL MAIL \*\*\*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
280 S. FIRST ST., 2ND FL.
SAN JOSE, CA 95113